THOMAS C. DRENNAN, Claimant, *v*. THE ·STATE OF NEW YORK.

Claim No. 15316.

LILLIAN M. DRENNAN, Claimant, *v*. THE STATE OF NEW YORK.

Claim No. 15315.

THOMAS McDONALD, Claimant, *v*. THE STATE OF NEW YORK.

Claim No. 15567.

(New York Court of Claims, October, 1919.)

Claims — against the state for personal injuries — evidence — damages — bridges — automobiles — negligence.

An automobile in which were the three claimants herein was being driven south along a street in the city of Syracuse connecting with a bridge crossing the Oswego canal, just as the bridge was being raised to permit the passage of a boat. The automobile· ran off the southerly or southwesterly end of the bridge, which was elevated a short distance from the street level, and tipped over. Upon the hearing of a claim for damages for personal injuries sustained by each of the claimants, the evidence disclosed that though there were no lights or signals of any kind on the bridge other than an electric bell and gong, installed by the state, both of which were ringing at and before the time when the automobile entered upon the bridge, and that while there was a flagman at either end of the bridge, there were no guard gates at the approaches because with that particular type of bridge such gates were impractical. *Held,* that the means provided to warn users of the streets when the bridge was about to be operated, and to guard against accidents, were reasonable and ample, if the flagmen were reasonably attentive to their duties.

All of the claimants testified positively that as they neared the bridge, the flagman at the north approach motioned to them to pass over the bridge when he knew it was about to be raised. This testimony was denied by the flagman who was corroborated by the flagman at the other end of the bridge, who at the time was at least seventy or eighty feet distant from the other flagman. *Held,* that the evidence, though in conflict, fairly established that claimants were invited to enter upon the bridge by the one placed there by the state to notify them when danger existed and to guard their safety.

The claimants in acting upon the invitation of the flagman to proceed were not negligent but were justified in concluding that it was safe for them to do so.

CLAIMS for damages for personal injuries.

Costello, Burden, Cooney & Walters, for claimant.

Edward M. Brown, deputy attorney-general, for State.

SMITH, J. These claims are for damages for personal injuries claimed to have been sustained on August 12, 1916, at the Bascule canal bridge by means of which North Salina street in the city of Syracuse passes over the Oswego canal. The Bascule bridge is of a type which has hinges at one end and on these hinges the bridge is raised and lowered as occasion requires by appliances devised for that purpose. Salina street runs almost due north and south and the canal runs in a northwesterly and southeasterly direction, crossing Salina street at an angle of about thirty-five degrees, the northerly and southerly ends of the bridge crossing the street diagonally on lines running northwesterly and southeasterly. This bridge was hinged at its northerly or northeasterly end and when operated was raised and lowered at its southerly or southwesterly end. Its operating appliances were controlled at a station on the easterly side of the street

something less than two-thirds of the distance from the extreme northerly corner of the bridge on the west side of the street to the extreme southerly corner thereof on the east side of the street.

The operation of raising the bridge changes its plane from a level through inclines of various degrees toward a perpendicular and to a stage which permits the passage of boats, the floor or deck of the bridge sloping down toward north and toward the east in increasing degrees as the process of raising the bridge is continued.

This bridge, because of its type, its position in and with reference to the street and the manner of its operation, constituted a very dangerous condition requiring of the state great care in guarding against accidents to travelers on the street. As originally designed, the bridge was to be equipped with gates of the ordinary railroad crossing type, and standards upon which to hang such gates had been erected at both ends of the bridge, but no gates had been installed because it had been found that their operation would be interfered with by the trolley wires of the street surface railroad whose tracks extended through Salina street and across the bridge.

To warn travelers in the street that the bridge was about to be raised, the state had installed an electric bell and a gong, both operated from the bridge tender's cabin, the former by closing a switch by means of a lever after which the bell rings continuously until the switch is opened again, the latter by pulling a rope attached to the hammer of the gong. The state also employed flagmen whose duty it was to guard the approaches to the bridge and to warn travelers in the street when the bridge was about to be raised.

On the evening of August 12, 1916, between the hours of seven and eight o'clock, claimants were riding south on North Salina street in an automobile driven by claimant Lillian M. Drennan, claimants Thomas C. Drennan and Thomas McDonald being seated in the rear seat. The automobile was driven upon and over the bridge just as it was being raised to permit the passage of a boat on the canal, and while the southerly or southwesterly end of the bridge was elevated a short distance from the level of the street, the automobile ran off the elevated end of the bridge and tipped over on its side injuring the claimants.

It is claimed on behalf of the claimants that the state was negligent in failing to guard the approach to the bridge, and in failing to give suitable warning that the bridge was about to be raised, and also in that the flagman or watchman at the north end of the bridge actually invited them to enter upon and cross the bridge at a time when he knew the bridge was about to be raised for the passage of a boat on the canal.

The evidence does not disclose whether or not there were any lights or signals of any kind upon the bridge other than the electric bell and gong above mentioned, which bell and gong were ringing at and before the time when the automobile entered upon the bridge. There were no guard gates at the approaches for the reason, as stated above, that with this type of bridge, at the location where it was placed, such gates were impracticable and failure to install and operate them under the circumstances did not constitute negligence. The means provided by the state to warn users of the street when the bridge was about to be operated and to guard against accidents were reasonable and ample if its employees reasonably attended to their duties.

As to the conduct of the watchman or flagman at the north approach to the bridge at the time of this accident, there is a conflict of testimony, but the weight of the evidence fairly establishes the contention of claimants that as they approached the bridge the flagman negligently and carelessly motioned to them to pass over and across the bridge when he knew it was about to be raised. This is denied by the flagman who is corroborated by the flagman at the southerly end of the bridge who was at least seventy or eighty feet distant from the flagman at the northerly end of the bridge at the time. All three claimants testify positively to this direction of the flagman, and I am convinced that they speak the truth. Mr. Drennan, one of the claimants, is and for years has been a merchant of standing in the city of Syracuse, Lillian M. Drennan is his wife, and claimant McDonald occupies a position of trust and responsibility with the New York Central Railroad Company. They are all persons of intelligence and as witnesses appeared to be telling a frank and truthful story of the events leading up to and connected with the accident.

It is true that the gong had been rung by the bridge tender before starting to raise the bridge and that the electric bell was kept ringing from the time the signal to raise the bridge was given until after the automobile had passed over the southerly end of the bridge. It is also true that all the claimants were familiar with the bridge, its manner of operation and its dangers, but if, as I think the evidence fairly establishes, they were invited to enter upon the bridge by the servant of the state, placed there to notify them when danger existed and to guard their safety, they were justified in concluding that the way was safe for them to proceed and they were not negligent in acting upon the invitation and direction of the flagman.

Surrogate's Court, New York County, October, 1919. [Vol. 109.

As a result of the injuries sustained by him and his wife, claimant Thomas C. Drennan was obliged to pay and did pay for medical and hospital care and attendance the sum of $998, in addition to which he should recover as compensation for his injuries the loss of services and society of his wife the sum of $1,500, making in all the sum of $2,498, for which he is entitled to judgment.

The injuries sustained by Mrs. Drennan were slight and the expense of her medical treatment, etc., was paid by her husband and has been included in the amount awarded to him. As compensation for the injuries received by her, she should have judgment for the sum of $250.

Claimant McDonald necessarily paid for medical attention and treatment $432, with clothing damaged and destroyed of the value of $40. As compensation for his injuries, he should recover the sum of $1,000, making in all the amount of his recovery $1,432.

ACKERSON, P. J., concurs.

Claim allowed.